March 22, 1876. COLE *v.* COLBY.

*Lien—Attachment—Mortgage—Want of equity.*

The plaintiff claimed a lien for labor expended in building houses on certain lots of land, which originally constituted one lot, owned by two of the defendants, subject to a mortgage at the time when the plaintiff's contract was made. After the plaintiff's contract was made, the other defendants acquired by purchase interests in the land,—some by mortgage of the whole original lot, and others by purchase of separate lots; and the plaintiff by his bill, and an attachment issued upon it, sought to secure his lien. *Held*, that, on the facts stated in the bill and admitted by the demurrer, there was no occasion for the intervention of a court of chancery.

FROM Coös CIRCUIT COURT.

BILL IN EQUITY, by Stephen A. Cole against James D. Colby, H. T. Blakeslee, Emily S. Blakeslee, Frank P. Brown, Jacob Benton, The Savings Bank of the County of Coös, and Lewis Barter, substantially as follows: On August 7, 1874, James D. Colby and H. T. Blakeslee were the owners of a certain tract of land in Lancaster, situated on Railroad street, subject to a mortgage to the savings bank to secure the payment of the note of said Colby and Blakeslee to said bank, of even date with the mortgage, for one thousand dollars and interest annually. Said mortgage was given by said Colby and Blakeslee to said bank, and is dated July 24, 1874.

Said tract of land, on said August 7, 1874, had been divided by said Colby and Blakeslee into five building lots, the first of which lots is described as follows: Commencing on the southerly side of said Railroad street, ten rods easterly of said railroad land, and nearly opposite J. E. Dimick's house; thence running at right angles with said Railroad street, eight rods to a stake; thence parallel with said street 56 feet; thence at right angles with the last named line to the said street; thence on said street to the first bound.

Before said August 7, 1874, Colby and Blakeslee had erected a house upon said lot No 1. Said house and lot were and are of the value of about one thousand dollars. Said lots, Nos. 2, 3, and 4, lie in succession easterly of said lot No. 1, and are 56 feet front on Railroad street, and running back therefrom in right lines to the back line of said tract. Said lot No. 5 comprised the easterly end of said tract, being 56½ feet front on said Railroad street, and running back in right lines therefrom to the back line of said tract. At said date Colby and Blakeslee had commenced to build houses upon each of the other four of said lots. On August 7, 1874, the plaintiff made a contract with said Colby and Blakeslee that he would finish said houses for them for the sum of $699.65, to be paid him by them. They, by the terms of said contract, were to furnish the plaintiff all necessary materials to do said work, as fast as wanted by him therefor.

The plaintiff immediately entered upon the execution of said contract, and would have completed the same, had the said Colby and Blakeslee furnished material therefor, as by the terms of their said contract they agreed to do, which they now refuse to do.

The plaintiff has expended in labor in the building of said houses said sum of $699.65, and has a lien upon said property to that amount, superior to said mortgage to said savings bank. Said lot No. 2, and the house thereon, are of the value of $800. Said lot No. 3, and the house thereon, are of the value of $900. Said lot No. 4, and the house thereon, are of the value of $800. Said lot No. 5, and the house thereon, are of the value of $600.

The plaintiff has expended upon the house upon lot No. 1 about the sum of $5 ; he has thus expended upon the house upon lot No. 2 the sum of $145 ; upon the house erected upon lot No. 3 the sum of $145 ; upon the house erected upon lot No. 4 the sum of $170 ; and upon the house erected upon lot No. 5 the balance of said contract price, being $234.65. The said Colby and Blakeslee, on or about September 19, 1874, conveyed the third of the said building lots to the said Frank P. Brown, by deed of that date. Said Colby and Blakeslee, on August 25, 1874, conveyed lot No. 2 to said Emily S. Blakeslee, in mortgage, to secure the payment of the sum of $456 ; and said Colby, on September 14, 1874, conveyed the whole of said tract of land to said Jacob Benton, in mortgage, to secure the payment of two notes, amounting in all to $605. The plaintiff is informed and believes that there is in fact due to said Benton upon said notes about the sum of $125, and no more. Said Colby and Blakeslee, on October 5, conveyed the whole of said tract of land to the said Lewis Barter, in mortgage, to secure the payment of the sum of $1,707.34. The said conveyances to said Blakeslee, Benton, Barter, and Brown, and said savings bank, are all subject to the lien of the plaintiff upon said premises to secure payment to him for his labor in the erection of said houses.

Wherefore the plaintiff prays that an attachment may be issued against said property, that the plaintiff may secure his lien thereon ; that the amount due upon said several mortgages may be ascertained,

and the same be apportioned to said several parts of said premises ; and that the plaintiff's lien upon said premises may be apportioned to said several parts thereof.   Upon this bill a writ of attachment was issued by order of Mr. Justice LADD, for the purpose of securing and preserving the lien mentioned in the bill.   Brown filed a general demurrer denying that the bill showed any title to equitable relief.

The savings bank demurred, assigning for cause, (1) that the plaintiff had a plain and adequate remedy at law ; (2) that the bill is multifarious ; (3) want of equity in bill.   Colby demurred, assigning want of equity, and that the plaintiff has plain and adequate remedy at law. The plaintiff moved to amend his bill by inserting in the prayer for relief the following : " And for such further and other relief as may be just."

The questions hereon arising were transferred by LADD, J.

*Burns & Heywood*, for the plaintiff.

*Fletcher & Fletcher* and *G. A. Bingham*, for the defendants.

* CUSHING, C. J.   The demurrers admit all the facts which are well pleaded, and there is no suggestion on the part of the defendants that there are any facts stated which are not well pleaded.   I should infer that the statement, that all the conveyances held by the different defendants are subject to the plaintiff's lien, is intended to be a statement of a conclusion of law.   If so, it would not be admitted by the demurrer ; and I do not see how the mortgage of the savings bank, which preceded the plaintiff's contract, under which he claims his lien, can be subject to it.   *Cheshire Inst. for Savings* v. *Stone*, 52 N. H. 365.

The contract is stated in the bill to be a single contract embracing all the buildings on the land, and the price is stated at one gross sum ; and there is nothing which I can see to restrain the lien, for work done on each house, to the lot on which the house stands.

But in either case, I am not able to see any occasion which this plaintiff has for relief in equity.   If his lien is, as he says it is, superior to all the different conveyances, he has nothing to do but take his judgment and levy on each lot for the amount of his lien on that lot, leaving the various defendants to settle their conflicting rights among themselves.

So, if his lien is on the whole lot, for the whole amount of his claim, he may levy his execution on any part of it.   If his lien is on the whole land, subject to the savings bank's mortgage, he may levy on the equity of redemption to the amount of his claim.   If his lien is on each lot for the amount of labor laid out upon it, but still subject to the savings bank mortgage, he must of course levy on the equity of redemption to which his lien attaches ; and as the bill states and the demurrer admits the value of each separate lot, and the amount of his lien upon

---

* LADD J., having presided at the trial, did not sit.

each lot, there would seem to be no difficulty in satisfying his lien upon each lot, and holding the balance of the proceeds of the sale of the equity for the use of those to whom it belongs. The details of the contract are not before the court, so that we cannot undertake to decide, if the case called for such decision, which I think it does not, whether the lien attaches on the whole estate, or on each lot. In either case there seems no difficulty in satisfying the lien or liens, and leaving the defendants to settle their respective rights amongst themselves. At present I see nothing which requires the intervention of equity proceedings.

RAND, J., C. C. In this case I think the plaintiff has a plain and adequate remedy at law. I see no reason why, in order to enforce his lien, he should not have attached the equity of redemption in the four lots, and the buildings thereon, described in his bill. It appears by the bill that the savings bank mortgage is dated July 24, 1874, and is for $1,000 and interest; that the plaintiff's claim is $699.65; and that lot No. 1 is of the value of $1,000, and the other four lots of the value of $3,100.

It is held, in *Wall* v. *Robinson*, 115 Mass. 429, that when labor is performed under an entire contract, in the erection or repairing of several buildings owned by the same person and situated on the same lot, a lien attaches upon the whole estate for the value of the labor performed. And in *Colley* v. *Doughty*, 62 Me. 501, it is held that one who buys real estate, after the erection of a house thereon, is not a necessary party to a suit brought by the builder to enforce his lien upon the building, and the lot upon which it stands.

If those defendants who hold by deeds and mortgages subsequent in date to the date of the plaintiff's lien have any rights which the plaintiff is bound to respect, those rights can be adjusted after judgment against the defendants Colby and Blakeslee.

SMITH, J., concurred.

*Demurrer allowed.*