HALE v. BROWN & a.

A lumberman's lien, under Gen. St., c. 125, s. 14, attaches to the whole of the lumber cut and hauled by him, although he has performed only a part of the contract within sixty days prior to the bringing of his suit to enforce the same.

If an executory contract can be determined as to time by some definite limitation, as to quantity by measurement, and as to price by arithmetical computation, it will be held to be entire.

Under Gen. St., c. 125, s. 14, "personal services" include work accomplished by the laborer's own exertions, aided by the use of such articles of his own personal property as are essential to the service rendered.

A contractor, under this statute, has no lien on account of the labor of his servants and teams, but he may have a lien for his own manual labor.

ASSUMPSIT, to recover a balance due for cutting and hauling spruce lumber. Writ dated May 27, 1875, and attachment made on the following day. Facts found by a referee.

On or about the 8th day of January, 1875, the defendants employed the plaintiff to cut and haul, from the Hanson lot to their

steam saw-mill, all the spruce that he could thus cut and haul during that sledding season, after he had finished cutting and hauling pine in fulfilment of his contract in writing with them, dated October 16, 1874, and agreed to pay him $5 per thousand feet for so doing. The plaintiff commenced to cut and haul spruce, under this agreement, about the 12th day of February, 1875, and continued so to do until the last day of March, 1875, and during this time cut and hauled 269,078 feet. The defendants knew that the plaintiff was thus engaged, and did not object, although they claimed that he should haul more pine by virtue of his written contract. On the 31st day of March the plaintiff quit work for the defendants entirely. The contract relating to the spruce was an entire continuous contract, and a portion of said spruce having been cut and hauled within sixty days of the time when this action was commenced, the referee held that the plaintiff had a lien upon the whole of said spruce, at the date of this writ, to secure the balance then due him for cutting and hauling all of it. The spruce logs, boards, &c., attached upon the plaintiff's writ, are the same on which said lien is claimed; and he asks for a judgment *in rem.*

It is admitted that the plaintiff, in cutting and hauling this lumber, employed servants and teams.

Both parties moved for judgment on the report,—the plaintiff, upon the ground that he had a lien for all the labor performed by his servants and teams; the defendants, upon the ground that the plaintiff can have a lien for the amount of his personal labor only, and that the report does not show that he performed any personal labor.

*Worcester & Gaffney,* for the defendants.

1. We claim that the case shows that the plaintiff had no lien whatever for cutting and hauling the spruce. The law, as it stood at that time, was embodied in the 14th section of *c.* 125, Gen. St., as follows: "Any person who labors at cutting, hauling, or drawing wood, bark, logs, or lumber, shall have a lien thereon for his personal services, which lien shall take precedence of all other claims except liens on account of public taxes, to continue sixty days after the services are performed, and may be secured by attachment;" and in *c.* 1, *s.* 2, Laws of 1871,—"Any person who labors at cutting, hauling, or drawing wood, bark, logs, or lumber, by himself for others, under a contract with an agent, contractor, or sub-contractor of the owner thereof, by giving notice in writing to said owner, or the person having charge of said property, that he shall claim a lien for labor to be performed, shall have the same lien as is provided in section 14 of said chapter 125, to be secured in the same manner."

The statute in Maine on the subject of liens on logs and lumber is nearly identical with ours, and is as follows: "A person who

labors at cutting, hauling, rafting, or driving logs or timber, shall have a lien thereon for the amount due for personal services," &c. Under this statute it was held, in *McCrillis* v. *Wilson*, 34 Me. 286–288, that the lien given by statute upon lumber for personal services of a laborer does not extend to the hire of his team of cattle, though employed upon the same timber. The object of this statute was to protect the laborer, and for that purpose alone. The claim for the labor of the oxen, or for the value of the sled, can upon no reasonable principles of construction be regarded as for personal services.

The case finds that it is admitted that the plaintiff, in cutting and hauling this timber, employed servants and teams; and the report does not find, though the case had been twice heard, that the plaintiff performed any personal labor himself, and if he had, he could not have a lien for it under the circumstances.

Section 14 of *c.* 125, Gen. St., is so worded that there can be no doubt that it applies and gives a lien to the individual labor only of the plaintiff. The English language cannot make it plainer. Then the difference between the wording of this 14th section, and of the 9th and 11th, which give a lien upon vessels and buildings respectively, is very significant. In the case of the two last sections, the wording, with some slight variations, is, "Any person who by himself or others shall perform labor," &c. In the 14th it is, "Any person who labors," &c., "shall have a lien thereon for his personal services," showing plainly that the legislature intended to give this lien to laborers only for their own personal labors. It would seem that the maxim, "Who does by another does himself," can have no application.

The personal labor of the plaintiff, if he did any, was mingled and blended with other elements in the performance of the work he had undertaken. *Robbins* v. *Rice*, 18 N. H. 509. In the above case the court uses the following language: "The hired labor of a servant and a team were made use of by him, and it is not shown in what proportions these entered into and, with the debtor's personal labor, accomplished the work for which the trustee stands indebted." If this is the correct rule as to the wages due to the defendant in a case of foreign attachment, it would seem to be equally true in the case of a claim for a lien for personal services.

Neither does the act of 1871 give the plaintiff any right to a lien. There is no pretence that the plaintiff made any contract with any agent, contractor, or sub-contractor of the owner. The referee finds expressly that the plaintiff made his contract for cutting and hauling the spruce with the owner. Neither does the report find, nor was it the fact, that there was any notice given in writing to the owner, that the plaintiff would claim a lien for the labor performed. Both these elements are necessary in order to give the plaintiff a right to a lien under the statute of 1871. It was not until 1878 that the statute was passed, giving a lien to

"Any person who by himself or others, or by teams, shall perform labor," &c., .toward cutting, hauling, or drawing wood, &c. The enactment of the statute of 1878 shows that the law previous to that time was understood to give a lien only to laborers for personal services, or to sub-contractors who made a contract with some party other than the owner, and gave a notice in writing to the owner of their claim for labor.

2. The contract that they made about the spruce was not an entire and continuous contract. 2 Pars. Con. 517. In all cases where contracts have been held to be entire, it seems that there should be a definite amount of services rendered, or a definite amount of goods sold if it relate to the sale of goods. It would seem, too, that the consideration to be paid must at least be single and entire. But in the case at bar, the contract which the referee finds was made by the parties wants all these elements. The consideration to be paid is not single and entire. And what could be more indefinite or uncertain than the quantity to be hauled, namely, "all the spruce that he could thus cut and haul during that sledding season after he had finished cutting and hauling pine in fulfilment of his contract in writing"? It was very uncertain when he would finish cutting and hauling the pine left on the lot. It might take one month, or three months, to cut and haul the pine. The sledding season might last one week, and it might last twelve weeks. Then, again, how uncertain and indefinite in this respect. The agreement was for "all the spruce that *he* could cut and haul." Does this mean what he could cut and haul by his own personal labor only, or did it mean what he could cut and haul with the aid of ten men and oxen, or what he could cut and haul with one hundred men and oxen?

If by any possibility the contract made between the parties could be considered entire, when he broke that contract by beginning earlier to haul the spruce, and leaving pine not cut and hauled, he destroyed the entirety of the contract. The implied contract in law that he carried out might be one on which he could recover for his services of the defendants personally, but that is a very different thing from an *entire* contract, such as would give him a lien for the whole if any portion of the work was done within sixty days before the service of the writ. On the contract that he really executed, the plaintiff could recover only on a *quantum meruit*, and we submit that this shows that the contract is not an entire one. He did not carry out the especial express contract that he made with the defendants, and so must recover, if at all, on a *quantum meruit*. Any contract so indefinite as to require such a legal remedy cannot be an entire one. *Carleton* v. *Woods*, 28 N. H. 290; *Clark* v. *Baker*, 5 Met. 452; *Miner* v. *Bradley*, 22 Pick. 457.

*Copeland* (with whom were *Eastman* and *Hobbs*), for the plaintiff.

Remedial statutes are to have a liberal construction to advance the remedy. *Holt* v. *Smart*, 46 N. H. 10; *Coburn* v. *Rogers*, 32 N. H. 372; *Rich* v. *Flanders*, 39 N. H. 304, 312; *Moore* v. *Taylor*, 44 N. H. 370; *Roberts* v. *Peavey*, 27 N. H. 497. The law of 1866 was a remedial one. The object was to give a practical remedy to one, among other things, who labors at hauling and cutting logs. The construction claimed by the defendants denies the remedy to those who use the oxen or horses in "hauling." As teams are indispensable in hauling, the defendants' construction renders the statute nugatory. Such a construction defeats the remedy. The object and general intent of the legislature are in all cases to be regarded in construing statutes. *Jones* v. *Gibson*, 1 N. H. 272; *Barker* v. *Warren*, 46 N. H. 124. In many cases the letter of the statute has been enlarged or restrained according to the true intent and meaning of the makers of the law. *Whidden* v. *Drake*, 5 N. H. 15. The statute puts him who labors at cutting and him who labors at hauling within the remedy. As he who hauls must have a team, may not he who cuts have an assistant?

By the Act of 1871, c. 1, s. 2, "He who labors by himself or others under a contract with an agent," &c., "shall have the same lien as provided in s. 14, c. 125." This is a legislative construction of the act of 1866, and gives one who works for an agent or contractor the same lien as one who labors for the owner. That "same lien" puts both claims on a level, for the "same lien" gives in express terms the second class the remedy for work performed by others. It is clear that under the act of 1866 the remedy included teams and servants. By the defendants' construction, under the act of 1866 a lien was given to a man for only what he did with his own hands, and under the act of 1871 the "same lien" included servants. Taking both statutes together, it seems that the legislature clearly put the two classes of cases on the same ground, gave both the "same lien" and for the same services, and, as the labor in this case was performed since 1871, the rights of the parties are to be determined under the law as explained by that act.

In *Jacobs* v. *Knapp*, 50 N. H. 71, this section of the statute of 1866 was before the court, and they say the terms of the 14th section, "he who labors at cutting," under the common application of the maxim, *Qui facit per alium facit per se*, are logically and legally applicable to the general contractor having servants or sub-laborers under him. This is but the natural construction of the language of the law, and to hold otherwise and to give to the term "personal services" the prominence which would deprive the contractor and creditor of the lien, and bestow it upon strangers, would work manifest injustice. The language of the court in *Jacobs* v. *Knapp* applies exactly to this case. Giving undue prominence to the term "personal services" defeats the remedy, works manifest injustice, and is contrary to the plain intent and meaning of the legislature. *Jacobs* v. *Knapp* was decided under the act of

1866 before the act of 1871, and when in 1871 the same lien was extended to sub-contractors, it was after a judicial interpretation applying the maxim, *Qui facit per alium facit per se*, to the term "he who labors." The Gen. Laws put the act of 1866 and of 1871 together, and again it appears from the acts of the legislature that our construction is the correct one.

Whether the contract was entire and continuous was a question of fact, and the finding of the referee is conclusive.

*Worcester & Gaffney*, in reply.

Even if it should be held that the "personal services" included the labor of the team, it certainly could not include anything besides the team that was managed and driven by the plaintiff, and as that has been mingled with the work of other men and other teams, the plaintiff can claim no lien, even if he rendered any personal services at all, which the report does not show.

"If labor and materials have been furnished and used in the erection of a building under an entire contract, with no stipulation for any separate price for either, and there is no mechanics' lien for the whole, there can be none for any part." *Graves* v. *Bemis*, 8 Allen 573; *Morrison* v. *Minot*, 5 Allen 403, 405; *Smith* v. *Emerson*, 126 Mass. 169; *Weymouth* v. *Sanborn*, 43 N. H. 171; *Robbins* v. *Rice*, 18 N. H. 509; *Wilder* v. *French*, 9 Gray 393; *Trask* v. *Searle*, 121 Mass. 229, 230. So that, even in the event of the court's finding that the contract was an entire one, the plaintiff cannot recover.

A similar rule obtains in the analogous case of confusion of goods: only, in cases like that at bar, courts seem to hold that in a mingling of services the plaintiff is conclusively barred from recovering. If the contract was entire, the plaintiff could not recover for anything he did under it until he had completed the contract, unless there was express stipulation in regard to his pay. The contract, as stated by the referee, does not show any such stipulation. But the referee finds that the plaintiff quit work on the job before its completion, because he was not paid for what he had done. Under these circumstances it is very doubtful if he could recover any pay at all, much less have a lien.

The plaintiff in his brief places much stress on the circumstance that the statute of 1871 gives the same lien as the previous statute. It does give the same lien, but for different reasons. That is, it gives a lien "to continue for sixty days, and may be secured by attachment." Unless the contract was entire, the plaintiff can only recover for work done within the sixty days of the service of the writ. The time from which the commencement of proceedings dates is from the performance of the services, unlike the law in Massachusetts, where the proceeding must commence within a certain number of days after "ceasing to work on the structure."

FOSTER, J.  I.  The referee has determined the fact that the contract in relation to cutting and hauling the spruce lumber was "an entire continuous contract," by which we understand him to mean a contract for an entire undertaking, to be commenced and continued until its completion. If the fact be so, the conclusion of the referee was correct, that the plaintiff's lien, if he had any, extended to the whole of the spruce lumber, as security for the balance due him for cutting and hauling it, a portion of the entire contract, continuous labor, having been performed within sixty days prior to the commencement of the action. Gen. St., *c.* 125, *s.* 14; *Bryant* v. *Warren*, 51 N. H. 213; *Freeto* v. *Houghton*, 58 N. H. 100; *Hill* v. *Callahan*, 58 N. H. 497, and cases there cited.

II.  It appears that the spruce lumber was cut and hauled under a verbal contract, by which the plaintiff engaged to cut and haul from the Hanson lot to the defendants' saw-mill all the spruce lumber he could cut and haul during the sledding season, after he had finished cutting and hauling certain pine lumber in fulfilment of a previous written contract with the defendants. For this service the defendants agreed to pay him five dollars per thousand feet. Here was an entire contract. It was distinct from the previous written contract. "If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is proportional to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable." But "if the consideration to be paid is single and entire, the contract must be held to be entire, although the subject of the contract may consist of several distinct and independent items." 2 Pars. Con. 517. Here were two contracts; but the latter, though severable from the former, was entire in itself. We are unable to see how or why the fact that the plaintiff commenced operations on the verbal contract relating to the spruce lumber earlier than it was understood he would begin, and the fact that he never finished the prior contract, in any way tend to break the continuity or entirety of the latter contract. The consideration is single and entire, and the contract was definite and certain; because that is certain which may without difficulty be made certain. The lumber to be cut and hauled was determined, as to time, by the termination of the sledding season; as to quantity, by measurement; as to price, by arithmetical computation.

III.  Does the plaintiff's lien extend to the labor of his servants and teams? Prior to the enactment of the Gen. Laws, any person performing labor towards building or repairing any vessel, or a house or other building, was entitled to a lien on the building for the labor which he should perform "by himself or others," while the lien of a lumberman was limited to his "personal services." Gen. St., *c.* 125, *ss.* 9, 11, 14. Although the legislature has apparently abolished this discrimination against lumbermen (Gen. Laws, *c.* 139, *s.* 13), we must apply to this contract the law as it existed

when the contract was made and executed; and by that law it was declared, that "any person who labors at cutting, hauling, or drawing wood, bark, logs, or lumber, shall have a lien thereon for his personal services." Gen. St., *c.* 125, *s.* 14.

The defendants claim that the term "personal services" is so far restrictive that the lienor can take security and precedence of other claimants only to the extent of the product of the work accomplished by his own hands; and that none of the work produced through the labor of his agents or servants, his teams or his implements, can be included in the security of the lien. But it is manifest that an interpretation so narrow as this was never intended. The lumberman may cut down trees; therefore he must use an axe;—he may haul and draw lumber; therefore he must use chains, and probably sleds and oxen, or horses. The legislature could not have intended to exclude these appliances, without which it would be impossible to perform the labor. We have therefore little hesitation in holding that the personal services of the lumberman include the use and the earnings of his own oxen, chain, canthook, and his own team and sled, if these are actually used by him and are essential to the service rendered. We do not, in this case, go so far as to hold that, if the claimant did not labor himself, or if, acting as a common laborer, he loaned the use of his team on the same work, he could successfully claim the benefit of the lien on account of his team. Possibly this was the real question decided in the two cases cited by the plaintiff on this point—*McCrillis* v. *Wilson*, 34 Me. 286, and *Coburn* v. *Kerswell*, 35 Me. 126.

Whether a person in the plaintiff's position, a contractor, one who assumes the responsibility of performing a certain piece of work, and employs and superintends others in the performance of it, "labors," within the meaning of the statute granting one a lien for his "personal services," might be a question of no little difficulty in the absence of any judicial construction of this or similar statutes. The stock-broker, the clergyman, the student, the farmer, and the wood-chopper, all labor, but in different ways, requiring the exercise of different mental and physical powers. From the original and comprehensive meaning of the word itself, no reason, perhaps, could be suggested why a person who accomplishes a certain amount of work by the exercise of his mental powers, in connection with the physical exertion of others, could not be said to labor. The two classes or kinds of labor are dependent, the one on the other, and without both nothing would be accomplished. But when we study the legislative intention in the enactment of a law granting those who work chiefly through physical means certain privileges, it is possible to see that the term labor is used in a restricted sense, and not in its broad and comprehensive meaning. The object of the lien laws, now almost universal, is not doubtful, on authority at least. One purpose may have been to protect the laboring man, the man whose subsistence depends on the wages

earned by his own manual labor, from the reckless improvidence of his employer, and to furnish him with ample security for his earnings, which ordinarily he could not successfully demand. If this was the intention of the legislature in the passage of the law in question, then it follows that it does not apply to contractors employing men and teams to cut and haul timber, doing no manual labor themselves, and deriving their compensation from the profits realized. Most of the authorities that we have examined support this view of the law, except in cases where, from the wording of the statutes, a different intention clearly appeared. And we are not disposed to question the wisdom of those cases. *Weymouth* v. *Sanborn*, 43 N. H. 171; *Balch* v. *N. Y. & O. M. R. R.*, 46 N. Y. 521; *Parker* v. *Bell*, 7 Gray 429; *Stryker* v. *Cassidy*, 17 N. Y. (S. C.) 18; *Wentroth's Appeal*, 82 Pa. St. 469; *Jones* v. *Shawhan*, 4 N. & S. 257; *Ericsson* v. *Brown*, 38 Barb. 390; *Aiken* v. *Wasson*, 24 N. Y. 482; *Sullivan's Appeal*, 77 Pa. St. 107; *Winder* v. *Caldwell*, 14 How. 434; *Hoatz* v. *Patterson*, 5 W. & S. 538.

The case of *Jacobs* v. *Knapp*, 50 N. H. 71, may appear to be in conflict with this view. But the exact point decided in that case was, not that a contractor has a lien for the work of the men employed by him, but that there can be no lien without a contract, express or implied, with the owner of the logs, and that no contract could be implied, under the statute as it then existed, between the owner and one of the contractor's laborers. The *dictum* of the court, to the effect that the contractor might have a lien covering the wages of his men, may have been true at that time, as an expression of the apparent legislative intention, the evil thus avoided being the anomaly of double liens. But subsequently the legislature provided by amendment (Laws of 1871, *c.* 1, *s.* 2) that " any person who labors at cutting, hauling, or drawing wood, bark, logs, or lumber, by himself or others, under a contract with an agent, contractor, or sub-contractor of the owner thereof," by giving a prescribed notice, might have a lien for his wages. Under this statute there can be little doubt, we suppose, that the laborer himself may have security for his own personal services in his own name, and is not compelled to rely solely on the honesty of the contractor. This enactment furnishes strong evidence that the law was intended to protect the laborer, the man who performs the manual work, and that it was not the intention, when this amendment was made, that there should be a confusion of opposing liens, the contractor having a claim for the wages of all his men, and each man having a claim for himself.

The facts do not show that the plaintiff performed any personal labor in the sense before indicated. But the statute, being intended to apply the lien only to the personal manual labor of the claimant, it cannot be applied in a case where his labor is undistinguishably combined with the labor of other persons procured upon the responsibility of the plaintiff (persons not in privity of contract with

the defendants), and for the purpose of accomplishing a work which the plaintiff has undertaken to do. No means are furnished by which it is possible for us to extricate the privileged labor from the other ingredients composing the general result, and to ascertain its value. *Robbins* v. *Rice*, 18 N. H. 509. Unless the value of the plaintiff's manual labor, if he did any, can be ascertained, there must be judgment for the defendants; but if it is desired, a motion may be made at the trial term to have the report recommitted to ascertain the value of the plaintiff's individual labor.

*Case discharged.*

STANLEY, SMITH, and CLARK, JJ., did not sit: the others concurred.