KENDALL    v.  PICKARD.
RICHARDS  v.        "
BROWN      v.        "
TUCKER     v.        "
CLARK      v.        "
FIPPHEN    v.        "

Builders' liens, under P. S., c. 141, ss. 10–17, have precedence in the order of their accrual, and, if they accrue simultaneously, in the order of the attachments made to secure them.

ASSUMPSIT, by each of the several plaintiffs for materials furnished and labor performed for the defendant in erecting his house, and to secure a lien thereon. All the liens were secured by attachment made within the prescribed ninety days, but not simultaneously. The property is not sufficient to pay in full all the claims. The first attaching plaintiffs insist that their claims must be paid in full; the others that the property be applied proportionately on all the claims.

*Samuel Upton* and *Charles E. Cochran*, for the first attaching plaintiffs.

*Oliver E. Branch*, for the other plaintiffs. " If a person shall, by himself or others, perform labor or furnish materials to the amount of fifteen dollars or more for erecting, altering, or repairing a house or other buildings or appurtenances, by virtue of a contract with the owner thereof, he shall have a lien thereon and on any right of the owner to the lot of land on which the house, building, or appurtenances stand." P. S., c. 141, s. 10. By section 16 of the same chapter, the lien created by section 10 continues for ninety days after the services are performed or the materials or supplies are furnished; and by section 17, any such lien may be secured by attachment of the property upon which it exists at any time while the lien continues, the writ and return thereon distinctly expressing that purpose, " and such attachment shall have precedence of all other attachments made after such lien accrued, unless founded on a prior lien."

Three questions arise : (1) Shall the proceeds of the property be distributed among the lienors in the order in which the liens accrued? (2) in the order of the attachments? or (3), the property being inadequate to satisfy them all, should it be distributed *pro rata* among all the attaching lienors ?

The first question must be answered in the negative. By section 17, the attachment to secure a lien takes precedence of all other attachments made after such lien accrued, except those

founded on prior liens. That is, if the lien of a painter is secured
by attachment, it does not take precedence of the lien of the
material-man who furnished the lumber, or of the carpenter who
did the work. It would only precede liens subsequently arising.

The second question must be answered in the negative, and for
the same reason. By section 17, a priority of the lien gives a
prior right, unless (as in this case) where the property is insuffi-
cient to pay all liens equity may intervene and decree a *pro rata*
distribution, upon the general principle that equity will relieve
against the consequences which arise from an application of strict
rules of law. Perhaps a solution of the question may be aided
by analyzing the nature of a lien and the relationship of lienors
*inter sese.*

What is a mechanic's or material-man's lien? It is strictly a
property interest in the building into which he puts his labor or
his material, and it becomes a vested property interest the instant
the labor is done or the materials delivered, by force of the
statute. That is, the statute steps in every moment while the
labor is being performed or the material is being delivered, and
impresses upon it, as it is incorporated into the building, the per-
sonal property right of the one who furnishes it, and continues
that right for ninety days after the last work is done or the last
item of material is furnished. *Weaver* v. *Sells,* 10 Kan. 609, 619.
If, then, one should furnish the foundation for a building, and
another should subsequently do the mason work, and following
him another should furnish the lumber, another the sash, blinds,
and hardware, another should take these materials and erect a
building, and another subsequently should do the painting, there
would be created by the statute a succession of property interests
in the completed structure; but if the materials were furnished
and the work was done by carpenters, masons, and painters, prac-
tically simultaneously, but as it was required from day to
day, then there would be no strict priority of liens, and each
would stand upon the same basis with all the rest. It cannot be
that a mason, who erects a chimney during the same week that a
carpenter is putting on the roof and a material-man is delivering
sheathing, would have any prior rights, or *vice versa.* There can
be no priority unless the materials are furnished and the labor per-
formed at distinctly successive times. We do not understand that
the lien accrues at the date when the last work is done or the last
thing is furnished: it is only from that time that the limitation
commences to run within which the lien may be secured by
attachment. The lien is created at the instant the material is
furnished or the work done.

In this case it does not appear when the liens were created,
whether practically simultaneously, or successively; but it is fair
to assume that they were created, as they usually are, by the put-
ting in of the foundations of the house, afterwards by the furnish-

ing of the lumber and other supplies, and by the work of the carpenters and painters subsequently employed to do the job; and if the property were sufficient to pay all claims, it would seem that under section 17 of the statute just quoted the attachments securing the first lien would take precedence of all others. But so long as the property is admittedly insufficient, is it not equitable that its proceeds, which in fact represent the labor which every mechanic has expended upon the materials furnished, together with the materials themselves, should be proportionally divided among them? Would it not be inequitable that the material-man, who furnished the lumber which represents really but a fraction of the completed house, should be permitted to satisfy his claim in full, and perhaps leave nothing to the mechanic or painter or mason whose labor it is that gives to the material sufficient value to pay the prior claim? This rule has been adopted in some states. In *Anshutz* v. *M'Clelland*, 5 Watts 487, 489, the court say,— "Where there are several mechanics' liens filed against the same house, a procedure and sale of the house by the sheriff upon any one of them divests the lien of all, and the purchaser will hold it discharged of all incumbrances. The proceeds of such sale will be divided *pro rata* among such lien creditors." And in *Moxley* v. *Shepard*, 3 Cal. 64, the court say,—"The appellants had a judgment against the building, of the same day with that of the respondents, for materials furnished for its construction. · Our statute has placed liens for materials and liens for labor on the same footing. The court erred in refusing to distribute the proceeds in conformity with the statute." This case is not very fully reported, but it would seem that the opinion of the court was, that so long as the material-man and laborer stood upon the same footing (as they do in our state), the proceeds of the sale should be distributed in the same manner, that is, *pro rata*. So, too, in *White* v. *School District*, 42 Conn. 541, the court say,—"If all the claimants had taken steps required by law to fix their liens upon the premises, of course all would be equally entitled, and there would be an apportionment among them of the sum due *pro rata*." In *Hall* v. *Wills*, 3 La. Ann. 504, the court take the position that where the property was insufficient to pay all liens, the proceeds should be distributed *pro rata*, upon the principle that among creditors equality is . equity; and they say,—"As to the rights of laborer and furnishers of material *inter sese*, they must share the fund *pro rata*. They do not rank in the order of time, and any such creditor for labor or materials has a right to participate in the fund until distributed." This seems entirely equitable, and the circumstances of this case are such as to warrant the application of this equitable principle. If, however, the language of section 17 is controlling in all cases, the lien of the plaintiff Fipphen, who put in the foundation, precedes that of Richards who furnished the lumber,

and that of Richards precedes that of Brown who finished the house. In that view, Brown's prior attachment does not divest Richards of his earlier property interest. The plaintiff's argument proceeds upon the hypothesis that the statute relating to attachments in ordinary cases must control. This ignores wholly the statute creating mechanics' liens, which controls in actions to enforce the payment of such liens.

CARPENTER, J. The builders' lien "shall continue for ninety days after the services are performed, or the materials or supplies are furnished, . . . and shall take precedence of all prior claims except liens on account of taxes." "Any such lien may be secured by attachment of the property upon which it exists, at any time while the lien continues, . . . and such attachment shall have precedence of all other attachments made after such lien accrued, unless founded on a prior lien." P. S., c. 141, ss. 16, 17.

By force of section 16, the lien during its continuance takes precedence of all other claims (of the character intended—*Cole* v. *Colby*, 57 N. H. 98, *Pike* v. *Scott*, 60 N. H. 469) except liens for taxes, of prior claims by its express terms, and of subsequent ones by necessary implication. Section 17 prescribes the mode of securing the lien, or making it available, and regulates the rights of the several lien-holders among themselves.

It is difficult to express in fewer and more explicit words the proposition that liens of the kind in question have precedence in the order of their accrual, and, if they accrue simultaneously, in the order of the attachments made to secure them. To make the lien available, judgment and execution against the debtor for the demand secured by it must be obtained. It is only by the levy of an execution that the property can be applied in satisfaction of the debt. The office of the attachment is merely to preserve the creditor's right to have the property applied in payment of his debt until by the levy of his execution an actual application can be made.

As the creditor can maintain no action against the debtor until his demand is due and payable, he cannot until that time secure his lien by attachment. The cause of action and the perfected enforceable lien accrue to him at the same moment. *Bean* v. *Brown*, 54 N. H. 395; *Calef* v. *Brinley*, 58 N. H. 90; *Hill* v. *Callahan*, 58 N. H. 497; *Hale* v. *Brown*, 59 N. H. 551; *Pike* v. *Scott*, 60 N. H. 469.

Attachments in general rank in the order of their making, but an attachment to secure a lien has "precedence of all other attachments made after such lien accrued, unless founded on a prior lien." A lien attachment made before "such lien accrued" must necessarily be "founded on a prior lien." As between lien-holders whose rights accrue at different times, a lien attachment

made at any time within the ninety days has the same force and effect as if made the instant the right accrues.  If successive attachments are made by several lien-holders whose liens accrue at the same time, they take rank in the order in which they are made, because no one of them is "founded on a prior lien."  If they are made simultaneously, no one can be preferred to another, and each creditor is entitled to a proportionate part of the property if it is insufficient to satisfy the demands in full.  *Thurston* v. *Huntington*, 17 N. H. 438.  By "other attachments," other lien attachments are intended.  Against attachments founded on claims not secured by lien, the lien-holder is protected by the provisions of the preceding section.

*Case discharged.*

All concurred.