Rockingham,
June, 1897.

### LAVOIE v. BURKE.
### ROWE & a. v. SAME.

Under P. S., c. 141, s. 11, by which one who performs labor or furnishes materials for making brick, through a contract with the owner thereof, is given a lien " upon the kiln containing such brick," the lien for all the labor or materials attaches to all the kilns upon which any part of the labor was performed, or for which any part of the materials was furnished.

ASSUMPSIT, the first case for labor and the second for materials. Facts found by the court. Lavoie worked at brickmak-

ing, at an agreed price per month, from April, 1896, until the latter part of the following September, under a contract with the defendant, who was the owner of the brick. Rowe & Dearborn, the plaintiffs in the second action, furnished wood to the defendant, under a contract made with him prior to February 13, 1896, by which they were to deliver from time to time, upon request, all the wood there was upon certain lots of land, at an agreed price per cord, but no time of payment was fixed. Others performed labor and furnished materials under similar contracts.

The yard where the brick were made was large enough to accommodate ten kilns at a time. When the defendant stopped doing business in September, 1896, sixteen kilns had been burned, and other brick were nearly ready for burning. The brick of several kilns were in process of manufacture at the same time. Lavoie's labor was performed upon brick indiscriminately, some of them going into each of the sixteen kilns and some remaining unburned. It is impossible to assign to each kiln the labor performed in making its brick. The wood furnished by Rowe & Dearborn was used in burning brick in the defendant's yard, but it is impossible to say in how many or in what kilns.

The defendant failed September 29, 1896, and the brick then in the yard, consisting of six full kilns, two parts of kilns, and the unburned brick, were attached by creditors. These brick were all made after July 25, those made prior to that date having been sold and removed. The plaintiffs and others claimed liens for labor and materials, and made attachments to secure the same within the prescribed time. There was due Lavoie $135.33, of which $102.72 was for labor performed after July 25 ; and there was due Rowe & Dearborn $1,438.88, of which $527.63 was for wood used after July 25. Judgment was ordered for each for the full amount claimed, subject to exception by the defendant's assignee in insolvency and by parties who appeared by leave of the court as claimants of the brick attached, who contended that Lavoie's judgment should be for $107.62, and that judgment in Rowe & Dearborn's action should be for the defendant.

*Drury & Peaslee* and *Aime E. Boisvert*, for the plaintiffs.

*Greenleaf K. Bartlett*, for the defendant's assignee.

*Arthur O. Fuller* and *John S. H. Frink*, for the claimants.

BLODGETT, J. The statute (P. S., *c.* 141, *s.* 11) upon which the plaintiffs' actions are founded, and by which any person who performs labor or furnishes materials for making brick, through a contract with the owner thereof, is given a lien " upon the kiln containing such brick," was obviously designed

to give to laborers and material-men a lien upon the property into which the labor and materials have gone, and as such it is not only to be construed liberally, so as to afford the protection and security intended by the legislature, but as a part of the general lien law of the state, it is to be given such an exposition as has been given to other sections, all of which are to be taken together as one system and construed consistently with and by a mutual reference to each other, as well as with the apparent intent of the lawmakers and the language of its expression.

Assuming the wood was contracted for the use to which it was applied, the application of the foregoing well settled rules is adverse to both of the defendant's contentions, and brings the case within the principle and reasoning of the decision in *Bean* v. *Brown*, 54 N. H. 395, which was a suit to enforce a lumberman's lien for a balance due for drawing a lot of lumber at the contract price of $2.50 per thousand, and which involved the construction of the statute enacting that " any person who labors at cutting, hauling, or drawing wood, bark, logs, or lumber, shall have a lien thereon for his personal services." G. S., *c.* 125, *s.* 14. Among other defences, it was contended by the defendant that the plaintiff had a special lien on each thousand feet of the lumber for the contract price of drawing it, and not a general lien on the whole lot for the amount of the unpaid balance. This contention was not sustained, the court saying (*p.* 397) : " The statute creating this lien must have a reasonable construction, and the construction contended for by the defendant would be most unreasonable. It would require the laborer to preserve for sixty days the identity of each thousand feet, although the lumber was in the possession of another. It would involve endless care, perplexity, expense, uncertainty, disputes, and litigation. In fact, it would be well-nigh or quite impossible to keep each thousand feet distinct and separate. Such a construction would practically nullify the statute. We entertain no doubt that the legislature intended to give the person cutting or drawing lumber a lien on the whole quantity drawn for his personal services."

The construction given in *Bean* v. *Brown* has since been approved and followed in *Calef* v. *Brinley*, 58 N. H. 90, *Hill* v. *Callahan*, 58 N. H. 497, *Hale* v. *Brown*, 59 N. H. 551, and *Pike* v. *Scott*, 60 N. H. 469; and when applied to the facts of the present case in connection with the general statutory provision that " Words importing the singular number may extend and be applied to several persons or things " (P. S., *c.* 2, *s.* 3), it gives to the plaintiffs a general lien which attaches to all the kilns upon which the labor was performed or any part of the materials furnished, and consequently makes the division of time before and after July 25 of no importance.

*Exceptions overruled.*

CHASE, J., did not sit : the others concurred.